UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| WORLDCOM, INC., ET AL., | Case No. 02-13533 (AJG) |
| Debtors. | Jointly Administered |

ORDER CONCERNING MOTION BY A.P.G., INC., FOR RELIEF FROM THE AUTOMATIC STAY TO CONTINUE LITIGATION OF CASE PENDING BEFORE THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

Before the Court is a motion by A.P.G., Inc. (the "Movant" or "APG") seeking relief from the automatic stay in order to proceed with an appeal before the United States Court of Appeals for the First Circuit against MCI Telecommunications Corporation, (the "Debtors" or "WorldCom"). Movant requests an order lifting the automatic stay, pursuant to 11 U.S.C. § 362(d)(1), to allow Movant to proceed in an action entitled *A.P.G., Inc. v. MCI Telecommunications,* Docket No. 02-1120. Specifically, Movant requests an order to permit argument before the Court of Appeals and to conduct any further proceedings in accordance with the mandate of that court.

## I. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding as that term is defined by 28 U.S.C. § 157(b)(2)(G).

## II. General Background

On July 21, 2002, Debtors and substantially all of its direct and indirect domestic subsidiaries commenced cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and

1108 of the Bankruptcy Code.

III. The District Court Action

On December 28, 1998, APG filed an action in the United States District Court for the District of Rhode Island against WorldCom (the "District Court Action"). The District Court Action involves WorldCom's alleged wrongful conduct in connection with the sale of WorldCom's prepaid telephone cards to CVS Pharmacy, Inc., including WorldCom's refusal to pay APG, as sub-agent, any commissions on those sales. The complaint alleges claims for tortious interference, unjust enrichment, breach of contract, and misappropriation of trade secrets.

On January 8, 2001, the District Court entered summary judgement against APG on all counts of the complaint except APG's breach of contract claim. During the trial on APG's contract claim, the District Court entered judgment as a matter of law against APG in favor of WorldCom and the jury was discharged before any deliberations.

On January 24, 2002, APG filed a notice of appeal on all counts of the District Court's judgment (the "Appeal"). The record was duly transmitted to the United States Court of Appeals for the First Circuit and the case has been fully briefed and is ready for oral argument.

IV. Discussion

The filing of a bankruptcy petition operates as a stay applicable to all entities regarding the commencement or continuation of judicial proceedings against the debtor or against property of the estate. *See* 11 U.S.C. § 362(a).

> The automatic stay . . . promote[s] two principal purposes of the Bankruptcy Code. First, the automatic stay provides the debtor with a breathing spell from . . . creditors. In addition, the automatic stay allows the bankruptcy court to centralize all disputes

> concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) (internal citations and quotation marks omitted).

In a chapter 11 case, the protections provided by the automatic stay allow the debtor time to attempt to rehabilitate the business and facilitate the generation of revenue. *See AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990). In reorganization cases, the:

> [automatic] stay is particularly important in maintaining the status quo and permitting the debtor in possession or trustee to attempt to formulate a plan of reorganization. Without the stay, the debtor's assets might well be dismembered, and its business destroyed, before the debtor has an opportunity to put forward a plan for future operations. Secured creditors and judgment creditors might race to seize and sell the debtor's assets in order to obtain satisfaction of their claims, without regard to the interests of other creditors or the value of keeping assets together in an operating business. The stay prevents this piecemeal liquidation, offering the chance to maximize the value of the business.

3 COLLIER ON BANKRUPTCY § 362.03[2] (15th ed. rev. 2002); *see also In re Johns-Manville Corp.*, 57 B.R. 680, 685 (Bankr. S.D.N.Y. 1986) ("[T]he automatic stay is a crucial Congressionally-mandated tool necessary to the larger goal of rendering a total disposition of all claims in a reorganization proceeding.").

Notwithstanding these concerns, 11 U.S.C. § 362(d)(1) of the Bankruptcy Code empowers the Court to modify the automatic stay for cause. *See In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) ("[A] motion to continue a pre-petition litigation implicates Section 362(d)(1)."). The Bankruptcy Code does not define cause. *E.g.*, *Schneiderman v. Bogdanovich (In re Bogdanovich)*,

292 F.3d 104, 110 (2d Cir. 2002). As stated in the House Report:

> [A] desire to permit an action to proceed to completion in another tribunal may provide . . . cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from . . . creditors.

H.R. REP. NO. 95-595, at 343-44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6300.

The Second Circuit has endorsed certain factors for determining whether there is cause to modify the automatic stay in order to allow litigation to proceed in another forum. *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). Specifically,

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Id*. (citing *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (hereafter "Sonnax Factor(s)")). All twelve Sonnax Factors will not be relevant in every case, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), nor will the court accord equal weight to each element. *Burger Boys, Inc. v. South St. Seaport Ltd. P'Ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 688 (S.D.N.Y. 1994); *In re New York Medical Group, P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

The burden of proof on a motion to modify the automatic stay is a shifting one. *Sonnax*, 907 F.2d at 1285. The initial burden rests on the movant to show cause to modify the stay. *Bogdanovich*, 292 F.3d at 110; *Mazzeo*, 167 F.3d at 142; *Sonnax*, 907 F.2d at 1285. Only if the movant makes an initial showing of cause does the burden then shift to the party opposing the relief. *Mazzeo*, 167 F.3d at 142. Once a legally sufficient basis, or cause, is demonstrated by the movant, the party opposing the relief must prove that it is entitled to the continuing protections of the automatic stay. *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). If the movant fails to meet its initial burden of demonstrating cause, relief from the automatic stay should be denied. *Bogdanovich*, 292 F.3d at 110; *Mazzeo*, 167 F.3d at 142; *Sonnax*, 907 F.2d at 1285. The determination whether to modify the automatic stay depends upon the facts of each motion. *Bogdanovich*, 292 F.3d at 110.

The issue before the Court is whether there is cause to modify the automatic stay for the purpose of conducting the Appeal and any further proceedings in accordance with the mandate of the United States Court of Appeals for the First Circuit. Movant does not intend to execute on any judgment it may receive but only seeks to ascertain the value of its claim.

The Court makes the following findings on the arguments presented considering only those Sonnax Factors that the Court deems outcome determinative of the instant motion.

Sonnax Factors One and Two - Movant contends that the Appeal will not interfere with the administration of the case and will resolve certain issues. Even if the Movant could succeed before the United States Court of Appeals for the First Circuit and thereby return the matter to the District Court, Movant does not seem to appreciate that the matter will likely require a new trial. On this basis, it is far from certain that prosecuting the Appeal will result in anything concrete except diverting WorldCom's attention from far more exigent chapter 11 responsibilities at this stage of the case, like formulating a plan, reviewing executory contracts, or even finalizing its voluminous list of creditors. Movant has not convinced this Court of anything to the contrary. For these reasons, the Court resolves these Sonnax Factors in favor of WorldCom.

Sonnax Factors Ten and Twelve - According to Movant, continuation of the Appeal will efficiently resolve the value of Movant's claim thereby avoiding repetitive litigation before this Court. This may be true at the appropriate stage of WorldCom's bankruptcy case. Indeed, Congress has recognized that:

> it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

H.R. REP. NO. 95-595, at 341 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297.

Nevertheless, numerous considerations weigh heavily in favor of continuing the automatic stay absent any facts that suggest that the timing of liquidating Movant's claim should occur now rather than much later in the bankruptcy process. One of the purposes of the automatic stay is to provide the

debtor a breathing space in order to assess its business and formulate an exit strategy from bankruptcy. This breathing space serves a value-enhancing function that benefits all stakeholders in the bankruptcy process by allowing the debtor to concentrate its resources on correcting the problems that may have forced it into bankruptcy in the first place. In addition, the Bankruptcy Code provides a comprehensive claims adjudication process whereby most disputes concerning the amount and validity of claims can be determined efficiently in a centralized proceeding. Hence, there is often no compelling reason for allowing a claim to be determined in another forum.

Here, the size and scale of WorldCom's operations coupled with the fact that WorldCom's case is less than three months old only serves to underscore these considerations. In contrast to WorldCom's harm, Movant will, at the very least, be able to protect its interests before this Court by filing a proof of claim, and perhaps even have this Court estimate such claim pursuant to 11 U.S.C. § 502(c).

In addition, WorldCom has consistently maintained throughout the course of this case that there are approximately 2,500 prepetition litigations in various stages of preparedness in different courts that were pending as of the petition date. Although the Court recognizes that determinations to modify the automatic stay are made on a case-by-case basis, the Court could hardly imagine a more profound impact on the administration of this case in light of the underlying principles of the automatic stay, than the prospect of diverting WorldCom's resources and collective energies to staving off prepetition litigations at this stage of the case. Allowing this to happen contravenes the congressional mandate of affording the debtor a breathing spell upon the filing of a chapter 11 petition and would render some of the benefits of the automatic stay illusory.

In sum, upon balancing the equities here with judicial economy and based upon the available record, the Court concludes that these Sonnax Factors weigh heavily in favor of WorldCom.

V. Conclusion

Upon consideration of all relevant Sonnax Factors, Movant has failed to demonstrate cause for relief from the automatic stay at this stage of WorldCom's bankruptcy case. Thus, Movant's request for a modification of the automatic stay is DENIED.

SO ORDERED.

Dated: New York, New York
October 8, 2002

**s/Arthur J. Gonzalez**
UNITED STATES BANKRUPTCY JUDGE